**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
May 12, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

DANIEL G. STEVENS and DAVIS MURPHY, on behalf of themselves and all other persons similarly situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,

Plaintiffs,

v.

YOKOHAMA TIRE MANUFACTURING VIRGINIA, LLC, and YOKOHAMA TIRE MANUFACTURING VIRGINIA, LLC GROUP INSURANCE AND HOSPITALIZATION PLAN SALEM, VIRGINIA, jointly and severally,

Defendants.

Case No.: 7:26-CV-00393

**CLASS ACTION COMPLAINT**

Demand for Jury Trial

## CLASS ACTION COMPLAINT AND JURY DEMAND

1. Plaintiffs Daniel G. Stevens and Davis Murphy, on behalf of themselves and all other persons in the proposed class described in this Complaint (hereinafter, the "Class Representatives"), along with Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (hereinafter, the "USW"), bring this action against Defendant Yokohama Tire Manufacturing Virginia, LLC (hereinafter, "Yokohama") and Defendant Yokohama Tire Manufacturing Virginia, LLC Group Insurance and Hospitalization Plan Salem, Virginia (hereinafter, the "Plan").

2. Plaintiffs assert claims against Yokohama and the Plan under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and Section 502(a) of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Plaintiffs seek declaratory, injunctive, and Rule 23 class-wide relief to enforce Defendants' contractual obligations, as reflected in the governing collective bargaining and plan documents, to provide lifetime healthcare, a partial Medicare Part B reimbursement (also known as the "Special Medicare Benefit"), and life insurance benefits to hundreds of retirees and their eligible spouses, surviving spouses, and dependents from the company's now closed tire manufacturing plant in Salem, Virginia (hereinafter, the "Salem plant").

## I. PARTIES

3. Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania. For years, Plaintiff USW was the exclusive collective bargaining representative for the employees of Yokohama represented by the USW Local 1023 at the Salem plant. The USW has negotiated a series of collectively bargained agreements ("CBAs") with Yokohama concerning (among other things) retiree healthcare coverage, partial Medicare Part B reimbursement, and life insurance for retirees from the Salem plant.[1]

4. Daniel G. Stevens, Jr. worked for Yokohama at the Salem plant for approximately 31 years until his retirement in 2002. During his employment, he was represented by the USW Local 1023. Pursuant to the CBAs between the USW and Yokohama, Stevens has been eligible for and entitled to retiree healthcare, partial Medicare Part B reimbursement, and life insurance benefits since his retirement. He resides in Salem, Virginia.

5. Plaintiff Davis Murphy worked for Yokohama at the Salem plant for approximately 36 years until his retirement in 2021. During his employment, he was represented by the USW

[1] References to Yokohama and the USW in this complaint include their respective predecessors in collective bargaining at the Salem plant, including Mohawk Rubber Company and Yokohama Tire Corporation and the United Rubber, Cork, Linoleum, and Plastic Workers of America.

Local 1023. Pursuant to the CBAs between the USW and Yokohama, Murphy has been eligible for and entitled to retiree healthcare, partial Medicare Part B reimbursement, and life insurance benefits since his retirement. He resides in Blue Ridge, Virginia.

6. Defendant Yokohama, a subsidiary of Yokohama Corporation of North America, owned and operated the Salem plant for many years until the Salem plant's recent closure on or around March 18, 2026. Throughout that time, it was party to CBAs with the USW and the plan sponsor and plan administrator of the Plan.

7. Defendant Plan is an "employee benefit plan" within the meaning of ERISA and is the ERISA plan through which Yokohama is contractually obligated under its CBAs with the USW to provide retiree healthcare benefits, partial Medicare Part B reimbursement, and life insurance benefits to members of the proposed class.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action, under (1) Section 301 of the LMRA, 29 U.S.C § 185; (2) Section 502 of ERISA, 29 U.S.C. § 1132(e) and (f); and (3) 28 U.S.C. § 1331.

9. Venue is proper in this District under 29 U.S.C. § 185(a) and 29 U.S.C. § 1132(e)(2). Venue is proper because: (1) Defendants Yokohama and the Plan reside, are located, and transact business in this District; (2) Plaintiff USW represented employees in this District; (3) Plaintiffs Stevens and Murphy reside in this District; (4) the Salem plant is located in this District at 1500 Indiana St., Salem, VA 24153; (5) the retiree benefits at issue are administered and provided in this District; and (6) the breaches and ERISA violations alleged herein occurred in this District.

## III. STATEMENT OF FACTS

10. In 1989, Yokohama acquired the Salem plant. After acquiring the Salem plant, Yokohama owned and operated the plant until it was permanently closed on or around March 18, 2026. During the time Yokohama operated the Salem plant, Yokohama and the USW were parties to a series of CBAs which governed the terms and conditions of employment of the employees in the USW Local 1023.

11. Among those CBAs were the parties' "Pension, Insurance, and Service Award Agreements" ("P&I Agreements") which specifically described employee healthcare and life insurance benefits, among other benefits, including the specifically negotiated retiree healthcare benefits, Medicare Part B reimbursement, and life insurance benefits for retirees that are at issue here.

12. The most recent P&I Agreement for the Salem plant went into effect in 2022 ("the 2022 P&I Agreement," an excerpt of which is attached hereto as **Exhibit A**).

13. The benefits described in the P&I Agreements were provided by the Plan, which was sponsored and administered by Yokohama and maintained pursuant to the parties' negotiated labor agreements. *See, e.g.*, **Exhibit A** at p. 145-146.

14. Each P&I Agreement specifically provided that the healthcare benefits described therein would apply not only to active employees, but also those who had retired under prior P&I Agreements. To that end, a Letter of Understanding attached to the P&I Agreements stated that the healthcare benefits described therein would "also apply to present retirees and surviving spouses." *See, e.g.*, *id.* at p. 165.

15. The P&I Agreements also expressly explained that upon retirement, active employees would continue to receive healthcare benefits if they met certain conditions for eligibility.

16. Specifically, the P&I Agreements stated under a provision titled "11. Employees Retired on Pension[,]" that employees who met particular eligibility requirements and "who are eligible and receiving a monthly pension" "(other than a deferred vested pension)" would receive healthcare benefits in retirement. *See, e.g.*, *id.* at pp. 111-112.

17. In addition, the P&I Agreements provided continued healthcare benefits for eligible surviving spouses and eligible dependents of retired employees.

18. Specifically, the P&I Agreements stated under a provision titled "12. Survivor Benefits[,]" that a surviving spouse of a deceased retired employee "shall be entitled to continue to receive the [healthcare] benefits [] until death or remarriage to the extent that such surviving spouse was entitled to such benefits as a dependent immediately prior to the death of such deceased former Employee[.]" *See, e.g.*, *id.* at p. 113.

19. Under the same provision, the P&I Agreements provided that a surviving dependent of a deceased retired employee "shall continue to be eligible to receive such benefits and under the same conditions so long as the dependent continues to qualify as such[.]" *See, e.g.*, *id.*

20. Under a provision in the P&I Agreements titled "13. Special Medicare Benefit[,]" Yokohama also agreed to pay to a Medicare eligible "Employee, Pensioner or eligible Surviving Spouse and their eligible dependents" the "lesser of the standard monthly premium for Part B of Medicare or $50[.]" *See, e.g.*, *id.* at p. 113.

21. Retiring employees from Yokohama's Salem plant were also entitled to continued life insurance coverage.

22. Specifically, the P&I Agreements provided that Yokohama would provide "standard form basic life insurance" and that, after retirement on a disability pension or a non-disability pension, the employee's benefit would continue and ultimately be reduced to a specified minimum amount. *See, e.g.*, *id.* at pp. 5, 7-8.

23. The P&I Agreements also reflected that the parties had negotiated a company contribution limitation on Yokohama's spending on the healthcare benefits for employees retiring on or after August 1, 1991 (and their spouses and surviving spouses). This agreement was contained in a letter agreement that became known as the "Retiree Medical FASB Letter."[2] *See, e.g.*, *id.* at pp. 170, 181.

24. When it was originally negotiated, and for several rounds of bargaining thereafter, the company contribution limitation set forth in that letter agreement, by the letter agreements' explicit terms, could not be implemented with respect to post-August 1, 1991 retirees until *after* the durational term of the P&I Agreement in which it was contained. *See* **Exhibit B**, Excerpts of 1991 P&I Agreement; **Exhibit C**, Excerpts of 1994 P&I Agreement; **Exhibit D**, Excerpts of 1997 P&I Agreement.

25. The structure and language of the P&I Agreement provisions described above demonstrate that eligibility for and receipt of the aforementioned retiree benefits is tied to one's retirement status, not to the duration of any particular CBA.

---

[2] "FASB" refers to the Financial Accounting Standards Board, which in December, 1990, issued Financial Accounting Standard 106 ("FAS 106"). FAS 106 required employers to account for postretirement benefits other than pensions (including healthcare benefits and life insurance benefits) on an accrual accounting basis rather than the then-prevailing pay-as-you-go (cash) basis. As a result of the implementation of FAS 106, many employers implemented company contribution limitations, also known as "caps," on their spending for retiree healthcare benefits. Ultimately, in this case, the company contribution limitation was implemented on August 1, 2004, although it did not impact retirees until August 1, 2009.

26. Under ordinary principles of contract interpretation, each provision of the P&I Agreements must be given effect, and no provision may be construed as superfluous.

27. Interpreting the P&I Agreements to permit Yokohama to terminate retiree benefits upon expiration of the CBAs would nullify the retiree-specific provisions described above and deprive them of meaning.

28. Therefore, when read as a whole, the P&I Agreements establish that Yokohama undertook a contractual obligation to provide lifetime retiree healthcare, partial Medicare Part B reimbursement, and life insurance benefits to retirees and their spouses and surviving spouses.

29. During negotiations in 2010, the parties executed a letter of understanding attached to and made part of the 2010 P&I Agreement establishing, and providing for funding to, a Voluntary Employee Beneficiary Association, or "VEBA." This agreement was carried forward in the parties' P&I Agreements in 2014, 2018, and 2022. *See, e.g.*, **Exhibit A** at p. 181.

30. The VEBA was designed such that the money in the VEBA would be "used to the extent available to help limit the future amounts retirees may be required to pay for medical coverage under the Retiree Medical FASB Letter." *Id.*

31. The VEBA was to be administered by a "Joint Committee" consisting of two representatives appointed by Yokohama and two representatives appointed by the USW. *Id.*

32. The USW and Yokohama agreed that "[t]he establishment of the VEBA is in no way a substitution or release of the Company's obligation to pay retiree/surviving spouse health insurance benefits to the extent that such obligation currently exists." *Id.*

33. During negotiations in 2018, the parties agreed, in a new letter agreement titled "Appendix 1," that effective January 1, 2019, the VEBA's Joint Committee would "establish, sponsor, administer and maintain the Yokohama Retiree Health Care Plan" to provide healthcare

benefits to post-August 1, 1991 retirees covered by the agreed upon company healthcare contribution limitation. This agreement remained in the 2022 P&I Agreement. *See, e.g.*, **Exhibit A** at Appendix 1.

34. The new Appendix 1 also provided that pre-August 1, 1991 retirees who were not subject to the capped contribution amounts "may participate in VEBA" and "Yokohama will pay 100% of the cost of health care benefits for this group." *Id.*

35. The agreement further provided that Yokohama would make contributions to the VEBA during the term of the parties' CBA. *Id*.

36. The agreement also stated that "[s]hould the Company fail to make such contributions [to the VEBA as set forth in the agreement], this Agreement shall become null and void, and the Company's obligations shall revert to the original language in the CBA and the P&I Agreement predating this Agreement." *Id.*

37. Accordingly, while the parties agreed that the VEBA would provide retiree healthcare coverage, they also agreed that this would not obviate Yokohama's contractual obligations to provide lifetime retiree healthcare, partial Medicare Part B reimbursement, and life insurance benefits.

38. As mentioned above, Yokohama permanently closed the Salem plant on or around March 18, 2026.

39. In connection with the closure of the Salem plant, and pursuant to an agreement entered into by the Company and the USW, the CBAs that were in effect at the time of the closure, including the 2022 P&I Agreement, have now terminated.

40. Yokohama takes the position that, now that the Salem plant is closed and the CBAs are terminated, it presently has no continuing contractual obligation pursuant to the 2022 P&I

Agreement, or any prior P&I Agreement, or any CBA, to continue to provide to the proposed Class (defined below) retiree healthcare, partial Medicare Part B reimbursement, and life insurance benefits beyond December 31, 2026.

41. Further, Yokohama has announced that it will stop providing any such benefits to the proposed class after December 31, 2026.

## IV. CLASS ACTION ALLEGATIONS

42. The Class Representatives bring this LMRA/ERISA action on behalf of themselves and the following class ("Class") of similarly situated persons:

> All retirees of Yokohama, its predecessors, or affiliated companies (collectively, "Yokohama") who: (i) worked at the Salem plant; (ii) were represented by USW and its Local 1023 or a predecessor union to either organization while an employee at the time they retired; and (iii) retired with eligibility, pursuant to the parties' P&I Agreement/s, for continued healthcare coverage, and/or the Special Medicare Benefit, and/or life insurance.
>
> Also included within the Class are the spouses, eligible dependents, and surviving spouses of such retirees where those spouses, eligible dependents, and surviving spouses, were eligible for continued healthcare coverage and/or the Special Medicare Benefit.

43. The number of Class members totals hundreds of individuals, and therefore the Class is large enough that joinder of individual members in this action is impracticable.

44. This case concerns common questions of law and fact. These include whether Yokohama has the right to unilaterally (that is, without bargaining with the USW) terminate or reduce Class members' retiree healthcare coverage, partial Medicare Part B premium reimbursement, and life insurance.

45. The relief sought is common to all Class members as set forth below in the section titled, "Relief Requested."

46. The claims of the Class Representatives are typical of the claims of all Class members, in that their claims arise from the same language of the P&I Agreements that govern the retiree benefits for the Class.

47. There is no conflict between the Class Representatives and any other Class member with respect to this action. Class Representatives have no interests antagonistic to those of the Class and will fairly and adequately protect the Class's interests.

48. Attorneys for the Class Representatives are experienced and capable in the field of class actions involving employment law, and certain attorneys for the Class Representatives are experienced and capable in the field of labor law and ERISA and have successfully prosecuted LMRA and ERISA class actions involving the retiree healthcare benefits of former union employees.

49. This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(2) because Yokohama has acted or refused to act on grounds generally applicable to the Class, such that final injunctive and corresponding declaratory relief is appropriate with respect to the Class as a whole.

## COUNT ONE

Claim for Company-Provided Retiree Benefits
Under Collective Bargaining Agreements:
LMRA § 301

50. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

51. The P&I Agreements described above are enforceable "contract[s] between an employer and a labor organization" within the meaning of LMRA § 301, 29 U.S.C. § 185.

52. Under ordinary principles of contract interpretation, courts must give effect to the plain language of the P&I Agreements.

53. The P&I Agreements conferred upon Class members a lifetime right to continued healthcare benefits, partial Medicare Part B premium reimbursement through the Special Medicare Benefit, and life insurance that survived the durational term of the P&I Agreements themselves.

54. The text of those P&I Agreements specifically linked the retirees' receipt of said benefits to their receipt of a pension benefit, which is a lifetime benefit as a matter of law.

55. The P&I Agreements also explicitly stated that surviving spouses would receive healthcare benefits, after the death of the retiree, "until death or remarriage[,]" implicitly indicating that the retirees themselves would receive healthcare benefits "until death."

56. In addition, the parties agreed in negotiations to a company contribution limitation that could only be implemented after the term of the P&I Agreement in which the contribution limitation was contained. This demonstrates that the company's obligation to provide healthcare benefits to retirees survived the term of the P&I Agreement which imposed the obligation.

57. By now taking the position that it has no continuing obligation to provide those retiree benefits, and that it will not provide those benefits beyond December 31, 2026, Yokohama has repudiated its obligation to provide lifetime retiree benefits pursuant to its contracts with the USW and announced its intention to violate those contracts, and that repudiation/violation is actionable under the LMRA § 301, 29 U.S.C. § 185.

## COUNT TWO

Claim for Company-Provided Retiree Benefits
Under Employee Benefit Plans:
Actionable under ERISA § 502(a)

58. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

59. The Plan is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1).

60. The Class Representatives and proposed Class members are "participants" and/or "beneficiaries" within the meaning of ERISA, 29 U.S.C. § 1002(7) and (8).

61. Yokohama is the plan administrator within the meaning of ERISA, 29 U.S.C. § 1002(16) with respect to the Plan and the retiree benefits at issue.

62. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

63. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), allows a participant or beneficiary to bring a civil action "to enjoin any act or practice which violates [ERISA] or the terms of the plan, or … to obtain other appropriate equitable relief … to redress such violations or … to enforce any provisions of [ERISA] or the terms of the plan."

64. The terms of the Plan are established, in relevant part, through the P&I Agreements.

65. Under those governing plan terms, Class Representatives and members of the proposed Class are entitled to continued retiree healthcare, partial Medicare Part B premium reimbursement through the Special Medicare Benefit, and life insurance benefits.

66. By now taking the position that they have no continuing obligation to provide the aforementioned retiree benefits, and that it will not provide those benefits beyond December 31, 2026, Defendants have repudiated their obligation to provide lifetime retiree benefits pursuant to the plan documents governing the Plan, and announced their intention to violate those plan documents, and that repudiation/violation of the negotiated terms of the Plan is actionable under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Certify this action as a class action under Fed. R. Civ. P. 23(b)(2), using the Class definition identified above, appoint Daniel G. Stevens and Davis Murphy as Class Representatives, and appoint John G. Adam, Esquire and Brittany M. Haddox, Esquire as counsel for the Class;

B. Declare that Defendants cannot unilaterally terminate or modify Class members' retiree healthcare coverage, partial Medicare Part B premium reimbursement, and life insurance;

C. Order Defendants to maintain Class members' retiree healthcare coverage, partial Medicare Part B premium reimbursement, and life insurance for their lifetimes;

D. As necessary, award to the Class Representatives and to Class members the monetary damages or surcharge or restitution or other monetary relief (plus interest), and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position in which they would have been but for Defendants' repudiation and/or breach of its contractual commitments;

E. Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in this action;

F. Grant such further relief as may be deemed necessary and proper.

## VII. JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

Respectfully submitted,

*/s/ Brittany M. Haddox*

**HADDOX LAW**
Brittany Haddox (VSB No. 86416)
1203 Texas Street
Salem, VA 24153
Telephone: (540) 765-4284
Facsimile: (540) 380-0065
brittany@haddox.law

**LAW OFFICE OF JOHN G. ADAM, PLLC**
John G. Adam (motion for *pro hac vice* forthcoming)
3950 W. 11 Mile Rd.
Berkley, MI 48072
Telephone: (248) 227-989
jgabrieladam@gmail.com

***Counsel for the Plaintiff Class Representatives and Putative Class Counsel***

**MONICA MROZ LAW**
Monica Mroz (VSB No. 65766)
PO Box 3189
Roanoke, VA 24015
Telephone: (540) 810-4745
monica@mroz.legal

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Joel R. Hurt (motion for *pro hac vice* forthcoming)
Ruairi McDonnell (motion for *pro hac vice* forthcoming)
429 Fourth Avenue

Law & Finance Building, Suite 1300
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
jhurt@fdpklaw.com
rmcdonnell@fdpklaw.com

David R. Jury (motion for *pro hac vice* forthcoming)
Cassandra Maas (motion for *pro hac vice* forthcoming)
United Steelworkers
60 Boulevard of the Allies, Room 807
Pittsburgh, Pennsylvania 15222
Telephone: (412) 562-2549
Facsimile: (412) 562-2574
djury@usw.org
cmaas@usw.org

***Counsel for Plaintiff USW***